# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SHERRY HAINES, Next of Kin of Deceased, SCOTT HAINES, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  No. 3:18-cv-01258 ) |
| THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, *et al.* | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

After the filing of the Second Amended Complaint (Doc. No. 61), Correct Care Solutions (now known as Wellpath LLC ("Wellpath")) and Calista Doll filed Motions to Dismiss (Doc. Nos. 68, 72) because of Plaintiff's alleged failure to comply with the requirement of the Tennessee Health Care Liability Act ("Health Care Act"), Tenn. Code Ann. § 29-26-101, *et. seq*. Under the Health Care Act, anyone "asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be named a defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state." Id. § 29-26-121(a). That notice "shall include . . . [a] HIPPA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent the notice." Id. The Act further provides:

> If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

Id. § 29-26-121(b) (2015).

Wellpath and Doll argue that Plaintiff did not meet these requirements. Among other things, she does not allege in the body of the Second Amended Complaint that she complied with subsection 121(a), as required by Section 121(b), and failed to attach HIPAA compliant medical authorizations to her pleadings, as also required by that subsection. Additionally, according to Wellpath and Doll, the medical authorizations that were attached to the Motion to Amend did not meet the Act's requirements because the form Plaintiff provided (1) indicates that records may be released to her attorney; and (2) fails to identify with specificity the provider who is permitted to release the records. In response to both motions, Plaintiff does not claim strict compliance with the requirements of the Health Care Act. Instead, she claims that there was substantial compliance, and that neither Wellpath nor Doll have suffered any prejudice as the result of any alleged deficiencies.

## I.

The Tennessee Supreme Court "has concluded that providing pre-suit notice to potential defendants is the 'essence' of the [Health Care Act] and, thus, compliance with the pre-suit notice requirement of subsection (a)(1) is mandatory." Clary v. Miller, 546 S.W.3d 101, 105 (Tenn. Ct. App. 2017) (citing Myers v. AMISUB (SFH), Inc., 382 S.W.3d 300, 309 (Tenn. 2012)). "Nothing short of strict compliance is acceptable." Id. "But, in the absence of prejudice to the opposing party, substantial compliance with other requirements in the statute is enough to avoid dismissal of the complaint." Id. Thus, for example, "[s]o long as a health care defendant is not prejudiced by a plaintiff's deviations from the statutorily prescribed method of service . . . substantial compliance with these statutory requirements will suffice." Arden v. Kozawa, 466 S.W.3d 758, 764 (Tenn. 2015). Likewise, "substantial compliance with the statutory affidavit requirement will suffice."

2

Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC, 433 S.W.3d 512, 521 (Tenn. 2014).

Although "Tennessee law is less than settled concerning the question of substantial compliance," Rush v. Jackson Surgical Assocs. PA, No. W201601289COAR3CV, 2017 WL 564887, at *4 (Tenn. Ct. App. Feb. 13, 2017) (citations omitted), the Tennessee Supreme Court in Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc., 418 S.W.3d 547, 556 (Tenn. 2013) stated that, in looking at substantial compliance, "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance," and noted that "[n]ot every non-compliant HIPAA medical authorization will result in prejudice." Id. There, the medical authorization was "woefully deficient" in several respects. Id. "First, and most importantly, by permitting disclosure only to plaintiff's counsel, plaintiff's medical authorization failed to satisfy the express requirement of Tenn. Code Ann. § 29–26–121(a)(2)(E) that a plaintiff's medical authorization "permit[ ] the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Id. Second, plaintiff's medical authorization failed to satisfy at least three of the six compliance requirements mandated by HIPAA. Specifically, the "authorization lacked a description of the medical information to be disclosed, 45 C.F.R. § 164.508(c)(1)(i); failed to state the individuals or organizations authorized to disclose the decedent's medical records, 45 C.F.R. § 164.508(c)(1)(ii); and failed to specify the type of information authorized to be used or disclosed, 45 C.F.R. § 164.508(c)(1)(iv)." Id. The court found these failures, collectively, established plaintiffs did not substantially comply with the Health Care Act and, accordingly, dismissal was appropriate.

In this case, the HIPPA medical authorizations were, as already noted, deficient, but they were not as deficient as the one in Stevens. Further, the Second Amended Complaint does not indicate on its face whether the Health Care Act has been complied with. Despite these deficiencies, the Court finds that Plaintiff has substantially complied with the Health Care Act, neither Wellpath nor Doll have been prejudiced, and dismissal would be manifestly unjust given the underlying facts and the procedural history of this case.

## II.

On November 6, 2018, Plaintiff as the next of kin of Scott Haines ("Haines") filed suit against the Metropolitan Government of Nashville ("Metro"), the Metropolitan Nashville Police Department ("Metro Police"), the Davidson County Sheriff's Office, the Davidson County Emergency Management Services ("EMS"), Officer Seth Vaughn ("Vaughn"), Wellpath (then Core Civic), and unnamed John Doe Defendants. An Amended Complaint added Deputy Michael Harvey ("Harvey") as a Defendant.

The underlying facts of both complaints were the same: (1) on May 5, 2018, Haines' family called for medical assistance after he had ingested methamphetamine; (2) Metro Police and EMS arrived on the scene; (3) Vaughn told Plaintiff that "it was a police matter"; (4) Haines was forcibly removed from the ambulance and taken to the Hill Detention Center ("HDC"); (5) upon arrival at HDC, no medical care was provided, even though deputies knew that Haines had ingested methamphetamine, (6) around 7:50 p.m. Haines began to complain of chest pains; (7) another ambulance was dispatched to HDC at 8:00, but was turned away by jail staff because the nurses there were assuming care; (8) around 8:40 p.m., Haines was sprayed with a chemical agent, and forcibly restrained by Harvey because Haines was allegedly "faking a seizure"; (9) at approximately

4

8:45 p.m. another call was placed to EMS; and (10) Haines was pronounced dead at approximately 10:30 p.m. Based upon these events, Plaintiff sued all Defendants for wrongful death; Metro, the Sheriff's Office, Harvey and the John Doe Defendants for excessive force and denial of medical care; and Vaughn, Harvey and Wellpath for the denial of medical care.

Wellpath filed a Motion to Dismiss on January 31, 2019 for failure to comply with the requirements of the Health Care Act. (Doc. No. 34). Plaintiff voluntarily dismissed her action as to that Defendant the same day. On February 15, 2019, Plaintiff sent certified letters to both Wellpath and Doll "pursuant to the provisions of Tennessee Code Annotated §§ 29-26-121 and §§ 29-26-122" [sic], in order to provide "notice of a potential claim against you . . . regarding the acts or omissions of you or one of your employees or agents." (Doc. Nos. 68-1 & 72-1). The letter then set forth a brief summary of Plaintiffs' allegations, and attached the HIPPAA releases containing the deficiencies already mentioned. On April 22, 2019, Plaintiff filed a Second Amended Complaint adding Doll as a Defendant, and a claim for Health Care Liability against her and Wellpath.

**III.**

Taken together, the decisions of the Tennessee Supreme Court in Stevens and Myers established two "guiding principles." Thurmond, 433 S.W.3d at 520. They "instruct that: (1) providing potential defendants pre-suit notice of health care liability claims is the 'essence' and 'fundamental' purpose of the pre-suit notice requirement, Myers, 382 S.W.3d at 309; and (2) unless strict compliance with a notice content requirement 'is essential to avoid prejudicing an opposing litigant,' substantial compliance with a content requirement will suffice, Stevens, 418 S.W.3d at 555." Id. Those two principles lead this Court to conclude that dismissal is unwarranted in this case.

5

Plaintiff sent both Wellpath and Doll pre-suit notice in the form of notice letters that summarized her claim more than sixty days before the filing of the Second Amended Complaint. These allegations were hardly surprising because Wellpath knew of the suit – and the underlying allegations – when the suit was originally filed on November 6, 2018. True, the Second Amended Complaint itself did not state compliance with the Health Care Act as required. However, the Certificate of Good Faith that accompanied the Motion to Amend averred compliance with the pre-suit Notice and other requirements of the Health Care Act.

It is also true that the HIPPA releases were deficient. However, the purpose of such releases is "to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records. Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's medical records." Stevens, 418 S.W.3d at 555. Thus, "'[a] plaintiff's less-than-perfect compliance . . . will not derail a healthcare liability claim' so long as the medical authorization provided is "sufficient to enable defendants to obtain and review a plaintiff's relevant medical records.'" Thurmond, 433 S.W.3d at 520 (citation omitted).

Wellpath and its employee Doll were the medical providers at HDC. The Tennessee Supreme Court definitively held in Bray v. Khuri, 523 S.W.3d 619, 622 (Tenn. 2017) that "a plaintiff need not provide a HIPAA-compliant authorization when a single healthcare provider is given pre-suit notice of a healthcare liability claim." This is because the provider has access to its own records, and "HIPAA regulations allow a healthcare provider to "use or disclose protected

6

health information for treatment, payment, or health care operations," including "'[c]onducting or arranging for medical review, legal services, and auditing functions.'" Id. (quoting 45 C.F.R. §§ 164.501 & 164.506(a)). Because there is no dispute that Wellpath had access to its own records and could review them, dismissal as to that Defendant is unwarranted. Whether dismissal of Doll is also warranted presents a closer question, given the recent Tennessee Court of Appeal's opinions Wenzler v. Xiao Yu, No. W201800369COAR3CV, 2018 WL 6077847 (Tenn. Ct. App. Nov. 20, 2018) and Hamilton v. Abercrombie Radiological Consultants, Inc., 487 S.W.3d 114 (Tenn. Ct. App. 2014).

In Wenzler, plaintiff sued Mary Wenzler, a dentist, and American Family Dentistry, the dental practice that employed her. Before filing suit, plaintiff gave written notice to both potential defendants of her claims, but provided HIPPA authorizations that were deficient because they did not identify the person or entity that was authorized to receive the disclosure as required by 45 C.F.R. § 164.508(c)(1)(iii). After the trial court dismissed the case, plaintiff appealed contending that she substantially complied with the Health Care Act and, alternatively, that "a HIPAA authorization was not needed because 'in essence the instant case involves a single health care provider.'" Wenzler, 2018 WL 6077847 at *2. The Court of Appeals reversed as to the dental practice based on Bray because the practice possessed the medical records in issue. Hence, "it was not necessary for American Family Dentistry to utilize the HIPAA authorization to obtain records from any other health care provider identified as a potential defendant, and American Family Dentistry was authorized to use the records in its possession to evaluate the merits of Plaintiff's claim without a HIPAA authorization." Id. at *8. However, the court also found that dismissal of the dentist was appropriate because the release "was not HIPAA-complaint," and plaintiff did not

7

demonstrate that the dentist had access to the records maintained by the dental practice so as to "enable[] her to evaluate [the] claim." Id. at *11.

In Hamilton, plaintiff filed suit after her husband died from an undiagnosed ischemic stroke, naming as defendants a radiological practice and a doctor in its employ. Plaintiff sent both defendants pre-suit notice and a HIPAA medical release that was deficient because it had "an open date line" for expiration. After the case was dismissed, the Tennessee Court of Appeals reversed, "conclud[ing] that the trial court applied the Stevens' holding too harshly[.]" Hamilton, 487 S.W.3d at 122. Acknowledging that "it is not good practice to omit any of the C.F.R. criteria from a HIPAA form," the court found that plaintiff substantially complied with the Health Care Act's requirements because she provided defendants "sufficient notice to obtain the relevant medical records," and no evidence was submitted to support the trial court's conclusion that there was prejudice. Id. In so doing, the court observed that "the decedent's medical records may, in fact, be held by the defendant, ARC, and may be accessible to Dr. Culhane by virtue of her employment with ARC." Id.

Based on Wenzler and Hamilton, the Court could go either way regarding the claims against Doll. Ultimately, however, the Court hearkens back to Stevens and its observation that "[t]he touchstone of th[e] analysis is whether a party's procedural error resulted in actual prejudice to an opposing party." Stevens, 418 S.W.3d at 555. "The aim of Tenn. Code Ann. § 29–26–121 is to ensure that prospective defendants receive adequate and timely notice of possible claims against them," not to "elevate[] form over substance." Hughes v. Henry Cty. Med. Ctr., No. W201401973COAR3CV, 2015 WL 3562733, at *4 (Tenn. Ct. App. June 9, 2015).

In her opening brief Doll did not claim prejudice. In her response she merely stated that, as

8

in Wenzler, she "does not possess or maintain the medical records." (Doc. No. 80 at 2). Neither she, nor Wellpath claim that they were actually denied access to Wellpath's records because of the deficient HIPAA releases, and it is undisputed that Plaintiff intended both to have access to her deceased son's medical records.

IV.

"The Tennessee Supreme Court has long recognized that '[d]ismissals based on procedural grounds . . . run counter to the judicial system's general objective of disposing of cases on the merits." Hughes, 2015 WL 3562733 at *4 (quoting Henry v. Goins, 104 S.W.3d 475, 481 (Tenn.2003)). Likewise, there is "[a] stong preference for trials on the merits in federal courts[.]'" United States v. $22,050.00 U.S. Currency, 595 F.3d 318, 322 (6th Cir. 2010) (citations omitted). This Court is no exception, particularly where, as here, substantial compliance – yet inadvertent procedural missteps – result in no harm or prejudice. Accordingly, the Motions to Dismiss filed by Wellpath and Doll will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE